—o-o-o—

## Henry Hopson v. Caroline Payne and Others.

Where a creditor seeks in chancery to reach property alleged to have been purchased with the money of his debtor and conveyed to the debtor's wife to keep the same beyond the reach of creditors, his bill will be demurable unless it shows, by clear and sufficient allegations, either: That his debt existed at the time of the conveyance: or that the debtor was embarrassed at the time, or, at least, indebted to others, and that the purchase money was paid by him and the deed taken to the wife for the actual fraudulent purpose to hinder, delay or defraud the then existing creditors: or that the purchase money was paid by the debtor, and the conveyance taken to the wife, for the purpose of defrauding future creditors.

Where a bill alleged in one place, that the purchase price of the property "was paid in cash," by the said wife, and, in another, that the husband "paid the purchase money for said premises, or that he furnished the money wherewith the same was purchased, to the said" wife, — *Held,* that as the law presumes honesty rather than fraud, it was to be inferred from these allegations, that the wife paid for the land with her own money, rather than the contrary.

*Heard October 26th and 27th. Decided November 2d.*

Appeal in chancery from Wayne Circuit, where the demurrer of Caroline Payne to the bill of complaint was sustained, and the bill, as to her, dismissed. The case is sufficiently stated in the opinion.

*Whittemore & Crosby,* for complainant.

*S. D. Miller,* for defendant Caroline Payne.

CHRISTIANCY J.:

The bill in this case, as to defendants Joseph Payne and Warren Cronk, is an ordinary judgment creditor's bill, So far as it relates to Caroline Payne, the wife of the de-

fendant Joseph Payne, the bill seeks to make her a trustee, for complainant and other creditors of her husband, of a certain lot or parcel of land conveyed to her by Duncan McKenzie and wife, by deed dated the 11th day of February, 1856, on the ground, as was claimed upon the argument and was probably intended to be alleged in the bill, that the same had been purchased with the money of her husband, and the deed taken in her name for the purpose of defrauding creditors of the husband; and it prays that she may be decreed to hold said land so conveyed, in trust for complainant and the other creditors of the husband, to the extent that may be necessary to satisfy their just demands; and that the same may be sold under the direction of the court, and the proceeds, as far as necessary, applied in satisfaction of complainant's judgment.

To this bill the defendant, Caroline, put in general demurrer for want of equity. The court below sustained the demurrer, and dismissed the bill as to her, with costs. The complainant has appealed to this court, and the only questions presented to us arise upon the demurrer.

Admitting that defendant, Caroline, may be properly joined with the judgment debtors, and that the lands conveyed to her by McKenzie, or the purchase money, could be thus reached by a creditor's bill, in the same manner as if the land had been owned and fraudulently conveyed by the husband, to which I can see no objection, but upon which the court express no opinion; we will first inquire whether the case made by the bill is sufficient (all facts well pleaded being admitted by the demurrer) to entitle the complainant to relief as against Caroline Payne.

Without attempting to enumerate all the facts which must be shown by complainant in such a case, to entitle him to relief against her, it is sufficient to say here, that no ground can be laid for reaching such a trust in her hands as this is claimed to be, without showing by clear and sufficient allegations in the bill, either:

1st: That the debt of Joseph Payne to complainant, on which the judgment was recovered, existed at the time of the conveyance; which might, if he had not other property sufficient to pay his debts, make the payment of the purchase money by Joseph Payne constructively fraudulent, though no actual intent to defraud existed: Or,

2d: If the debt to complainant did not then exist, that the defendant Joseph Payne was embarrassed at the time, or at least indebted to others, and that the purchase money was paid by him, and the deed taken to his wife, for the actual fraudulent purpose of hindering and delaying or defrauding such then existing creditors: Or,

3d: If the debt to complainant accrued after the conveyance, that the purchase money was paid by the husband, and the conveyance taken to his wife, for the purpose of defrauding future creditors, or of protecting the property from debts to be thereafter contracted by him.

Are the allegations in the bill sufficient to base complainant's claim for relief upon either of the grounds above stated?

He can claim nothing on the first ground, as the conveyance from McKenzie to Caroline Payne was made, as stated by the bill, on the eleventh day of February, 1856, and the bill shows no indebtedness of Joseph Payne to complainant until the twelfth day of April following. It is equally clear that he can claim nothing upon the third ground, as there is no allegation or statement in the bill which points in that direction, or which, in the remotest degree, suggests that the conveyance was made, or the money paid, with any reference to protecting the money or the property from future debts. Nor can the court, in this case, infer this from the fact that the indebtedness accrued so soon after the conveyance, since there is no allegation in the bill to be sustained by the inference; and to infer it, would be to infer a case not made by the bill.

If, then, the complainant has any claim to relief against

Caroline Payne, upon the case made by the bill, it must be based upon the second ground above indicated, viz: that Joseph Payne was indebted to others at the time of the conveyance in question, and that the money was paid by him, and the conveyance. taken to the wife, for the actual fraudulent purpose of hindering, delaying, or defrauding those creditors.

But it is no where alleged in this bill that defendant, Joseph Payne, was indebted to any one, or that he owed a dollar at that time; nor anything from which any but the loosest inference can be drawn that such was the fact. It is true the bill, after setting out a judgment against Joseph Payne and Warren Cronk, the issue and return of an execution against them, the issue of an alias and levy upon the lot, and the conveyance by McKenzie to Caroline Payne of the lot in question, does proceed to allege that the firm of Payne & Cronk, in the latter part of the year 1855, failed in business, and became insolvent, owing a large amount of money to various creditors. This is the first intimation in the bill of the existence of any such firm; and being their first introduction, it would have been well if the complainant had told us who they were, or what connection, if any, they had with the judgment debtors, or with any of the matters set forth in the bill. But this he has left entirely to conjecture. He has not told us of whom the firm was composed, nor whether either of the defendants was, or ever had been, a member of the firm, nor the christian name of either.

Will it be said that we must infer from the bill that they were the judgment debtors, because they have the same surname? This will hardly be claimed — or because it is alleged that the said (Joseph) Payne from the time of the failure of this firm to the time of exhibiting the bill, has always pretended to have no money or effects to satisfy the claim of the complainant and his other creditors? This might equally have happened and would have

furnished equally as plausible ground for such pretences, if Joseph Payne had been a creditor of, and lost largely by, the firm — or because it is charged that the convey ance in question was made to place the premises beyond the reach of his creditors, and those of the firm of Payne & Cronk? This might equally have happened if he had been an endorser, or was otherwise liable for any debt of that firm. The most that can be said of the bill upon this point, is that there is a probability that complainant intended, by the firm of Payne & Cronk, the judgment debtors. But a matter so susceptible of direct allegation should never be left to such loose probabilities and uncertain inferences. And whatever view might have been taken of the point, if an answer had been put in, proofs taken, and the parties had gone to a hearing, we can not consider this, upon demurrer, as equivalent to an allegation of the identity of the firm with the judgment debtors.

As to any allegation that the money of Joseph Payne was paid for the land conveyed to the wife, and the deed taken in her name, for the purpose or with the intent to defraud creditors, the bill is equally defective. A brief analysis of the portions of the bill relating to this point, will show these defects, and that, though there is, in terms, a charge of actual fraud, no facts are stated upon which such a charge can be founded, nor to which it can, with any certainty or propriety apply.

Thus, after stating the conveyance of McKenzie and wife to Caroline Payne and that its nominal consideration was twenty-four hundred dollars, the bill expressly alleges that the complainant " is informed and believes that that sum was *paid for the same in cash by the said Caroline Payne.*" Then, after stating the failure and insolvency of the firm of Payne & Cronk already noticed; the pretence of Joseph Payne that the money with which the premises were bought was the money of said Caroline; that complainant had discovered that the legal title to the premises was

never in said Joseph Payne, and that the levy upon it was wholly inoperative; and that said Caroline claims that the money with which the premises were purchased was money which she derived from some friends in some part of Europe, and that it was her individual property, the bill proceeds in the following words:

"And your orator further shows, that he is informed and believes, and therefore expressly charges, that said *Joseph Payne paid the purchase money for said premises*, or that he furnished the money wherewith the same was purchased, to said Caroline, and caused the deed thereof to be made and executed to the said Caroline, for the purpose of placing said premises beyond the reach of his creditors, and the creditors of the firm of Payne & Cronk; and that the whole transaction was in bad faith, and is a fraud upon your orator and other creditors of Joseph Payne."

Now, it will be noticed that, in this paragraph, the allegation or charge, in reference to the payment or furnishing of the money, is in the alternative; that is, that "Joseph Payne paid the purchase money, or that he. furnished the money wherewith the same was purchased, to said Caroline." He charges one of these alternative propositions no more than the other. He has not expressly charged by either that the money belonged to Joseph Payne; though it may be claimed either alternative implies this, viz: that he "paid it," or that he "furnished it" to her, and that she paid it—the first alternative implying that he paid his own money directly for the land; the last, that he paid it indirectly through his wife — both alternatives being the same in effect as to creditors. This is the only view in which this alternative allegation could lay any proper foundation for the charge of actual fraud upon creditors, which immediately follows it. And if this alternative allegation were the only one in reference to the payment of the money, it might be held a sufficient allegation of the payment of his own money for the land; as this would be the natural inference from the allegation that he paid it.

But if the allegation of the payment by Joseph Payne, the first alternative, implies that the money was *his*, then the previous allegation of the payment by Caroline Payne equally implies that the money was *hers;* for the allegation as to the payment by her is equally as direct and unqualified as that of the payment by him; and even more so, as it is stated without any alternative. Both are stated upon information and belief; and as the allegation of payment by him was clearly intended to allege a payment made *directly* by him, (as is evident from the alternative which follows it, charging an indirect payment through the wife), the first alternative is in direct conflict with the previous allegation of payment by her. The bill, therefore, no more shows that he paid his money for the land, than it shows that she had paid for it with her own money.

We may take it for granted that the money was paid by the one or the other; if paid by the wife, the transaction is innocent; if by the husband, it might be fraudulent. The complainant states that he is informed and believes she paid it, and, upon like information and belief, that he paid it. He has not told us which he has the most reason for believing, or which he most believes. Until he does this, he makes no case which calls upon her for an answer. She may safely admit it was paid by one or the other; and, as the law presumes honesty rather than fraud, it will presume that she paid it, until the bill, by clear and consistent allegations, avers the contrary.

If the bill, in place of the alternative allegation alluded to, had simply contained the latter alternative, viz.: that "Joseph Payne furnished the money wherewith the same was purchased, to said Caroline," the effect might have been different; as it then might have been more consistent with the former allegation of payment by her; that is, that he paid the money indirectly through her agency. The pleader probably intended this to be the effect of all the allegations upon the subject of payment, when taken together; but the

language he has used, we think, fails to express what he probably intended.

The decree of the circuit court, allowing the demurrer, and dismissing the bill as to defendant Caroline, must be affirmed.

MARTIN, Ch. J. and CAMPBELL J. concurred.

MANNING J.:

The bill, as to Mrs. Payne, I think, is bad on demurrer, for the want of certainty; and that the decree should therefore be affirmed.